1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN GARCIA,

       Plaintiff,

     v.

COURTESY FORD, INC. and GIG
HARBOR FORD, INC.,

       Defendants.

Case No. C06-855RSL

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on defendants' "Motion for Summary Judgment" (Dkt. #50) and plaintiff Susan Garcia's "Cross-Motion for Partial Summary Judgment" (Dkt. #59).[1]  Plaintiff has asserted claims of (1) gender and pregnancy discrimination under Title VII of the Civil Rights Act of 1964 and the Washington Law Against Discrimination ("WLAD"), (2) disability discrimination under the WLAD, and (3) unlawful interference with her benefits under the Family and Medical Leave Act ("FMLA").  Defendants, Courtesy Ford and Gig Harbor

---

[1] Because this matter can be decided on the memoranda, declarations, and exhibits submitted by the parties, plaintiff's request for oral argument is DENIED.

ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 1

1  Ford, move for summary judgment on all of plaintiff's claims.  Plaintiff cross-moves for

2  summary judgment to establish that defendants acted as a single or joint employer.

## II.  FACTUAL BACKGROUND

4  Defendants Gig Harbor Ford and Courtesy Ford are separate corporate entities, though

5  both are owned by members of the Hern family,[2] and both operate under the banner of Courtesy

6  Auto Group.  At the time of plaintiff's termination, Rick Hern served as Vice-President of both

7  dealerships.  He now is the President of both dealerships.

8  Plaintiff began working at Courtesy Ford as a Finance and Insurance Manager ("F&I

9  Manager") in early 1998 and transferred to Gig Harbor Ford in 2001.  She had her first child in

10  August 2002 and subsequently took a leave of absence under the FMLA.  She was later granted

11  disability and extended leave as a result of complications that arose from her pregnancy, and

12  returned to work on February 4, 2003.  In late 2004, plaintiff began informing co-workers that

13  she was attempting to become pregnant again.  In December 2004, plaintiff did in fact become

14  pregnant for the second time.  She was terminated on January 14, 2005 by Gig Harbor Ford

15  General Manager Graham Denny.  The reasons for her termination are the focus of the claims in

16  this case.

17  Defendants argue that plaintiff's termination was the result of her ongoing failure to

18  collect purchase disclosure forms (commonly referred to as "kiss sheets") and testimonial sheets

19  from customers.  Kiss sheets serve two purposes at Gig Harbor Ford.  First, they require the F&I

20  manager to restate many of the legal rights of the customer and document in writing that the

21  customer was in fact informed of these rights.  Second, they contain a marketing questionnaire,

22  which assists management in assessing the value of various marketing and advertising efforts.

23  The testimonial sheet asks customers to describe their overall experience with the dealership.

24

25      [2] Courtesy Ford is owned by John Hern, his wife Terry Hern, and his son, John "Rick" Hern.
John Hern is the sole owner of Gig Harbor Ford.

26

1  Defendants maintain that plaintiff was verbally warned of the importance of completing such

2  forms on multiple occasions throughout 2004, but that these warnings went unheaded.

3        Plaintiff contends that she was terminated due to her pregnancy and that defendants'

4  explanation for her termination is mere pretext.  In support of this argument, she draws attention

5  to the timing of her termination, which came a short time after she became pregnant and within

6  two months of when Denny admits he became aware of her plans to become pregnant.  She also

7  points to the fact that her performance at the time of her termination, as measured by the amount

8  of "dollars per vehicle" that she was producing, was superior to that of the only other F&I

9  manager at Gig Harbor Ford, Marvin Smith.  Plaintiff never received any written warnings

10 regarding her failure to produce kiss sheets or testimonials prior to her termination and was

11 subject to no other disciplinary actions in her seven years working for defendants.  She contends

12 that the only credible explanation for her termination in light of these facts is that defendants

13 chose to terminate her so that they could hire a full time F&I manager and avoid having to

14 provide her with FMLA leave.

### III.  DISCUSSION

**A.     Summary Judgment Standard**

17       Summary judgment is appropriate "if the pleadings, depositions, answers to

18 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

19 genuine issue as to any material fact and that the moving party is entitled to a judgment as a

20 matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if "a reasonable jury could return a

21 verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit

22 under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The

23 evidence is viewed in the light most favorable to the non-moving party.  Id.  "[S]ummary

24 judgment should be granted where the nonmoving party fails to offer evidence from which a

25 reasonable jury could return a verdict in its favor," Triton Energy Corp. v. Square D Co., 68

26 ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 3

1   F.3d 1216, 1221 (9th Cir. 1995), or where there is a "complete failure of proof concerning an

2   essential element of the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 323

3   (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's

4   position is not sufficient." Trinton Energy Corp., 68 F.3d at 1221.

5   **B.     Pregnancy Discrimination**

6           Plaintiff's pregnancy discrimination claims are analyzed under the burden-shifting

7   framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S.

8   792, 802 (1973). See Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 658-59 (9th

9   Cir. 2002).[3] Under that framework, plaintiff must first make out a *prima facie* case of unlawful

10  employment discrimination by demonstrating that (1) she is a member of a protected class, (2)

11  she was qualified for the position she held, (3) she suffered an adverse employment action, and

12  that (4) her position was filled by a man. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054,

13  1062 (9th Cir. 2002) (citing McDonnell Douglas, 411 U.S. at 802).

14          If plaintiff is successful in establishing a *prima facie* case, the burden shifts to defendants

15  "to articulate a legitimate nondiscriminatory reason for [their] employment decision." Wallis v.

16  J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (quoting Lowe v. City of Monrovia, 775 F.2d

17  998, 1005 (9th Cir. 1985), as amended, 784 F.2d 1407 (9th Cir. 1986)). If defendants are able to

18  rebut the presumption of discrimination raised by the *prima facie* showing, plaintiff must then

19  demonstrate that defendants' articulated reason is a pretext for unlawful discrimination. Aragon,

20  292 F.3d at 658.

21

22          [3] Washington courts also utilize the McDonnell Douglas framework in analyzing discrimination

23  claims under RCW 49.60 in the summary judgment context. See Kuest v. Regent Assisted Living, Inc.,
    111 Wn. App. 36, 43-44 (2002); see also Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1094-95 n.

24  4 (9th Cir. 2005) ("Washington's employment discrimination law largely parallels federal law under Title
    VII, and our treatment of Coghlan's Title VII claim thus applies also to his similar claim under

25  Washington law."). As such, the Court combines the two inquires in this order.

26  ORDER GRANTING IN PART
    AND DENYING IN PART DEFENDANTS'
    MOTION FOR SUMMARY JUDGMENT - 4

1      **1.    *Prima Facie* Case**

2      "The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . .

3      on summary judgment is minimal and does not even need to rise to the level of a preponderance

4      of a doubt." Wallis, 26 F.3d at 889.  Defendants do not challenge the fact that plaintiff was fired

5      or that she was replaced by a male (thus satisfying the third and forth elements of plaintiff's

6      *prima facie* case), but rather challenge the sufficiency of plaintiff's proof regarding the first two

7      elements of her *prima facie* case.  The Court finds that plaintiff has established a *prima facie*

8      case that her termination was due to her pregnancy.

9          Defendants argue that plaintiff's *prima facie* case must fail because she has not

10     established that Denny was aware of her pregnancy at the time she was terminated.  Denny did,

11     however, know that plaintiff was attempting to get pregnant.  See Declaration of John B.

12     Crosetto ("Crosetto Decl.") (Dkt. #59), Ex. E.  For the purposes of establishing a *prima facie*

13     case, such knowledge is sufficient to establish that plaintiff is a member of the protected class.

14     See Cleese v. Hewlett Packard Co., 911 F. Supp 1312, 1317-18 (D. Or. 1995) (extending Title

15     VII protection to intent to become pregnant); Pacourek v. Inland Steel Co., 858 F. Supp. 1393,

16     1401 (N.D. Ill. 1994).  As the court in Cleese explained, a claim of pregnancy discrimination

17     under Title VII

18          requires that the employer discriminate against the employee *because of* her
           pregnancy.  It seems to this court that if the employer has the requisite
19          intent to discriminate against an employee because she is currently pregnant
           or is planning to become so in the near future, it does not matter if she
20          actually physically conceived at the time of the discrimination.

21     911 F. Supp. at 1318 (emphasis in original).  Washington courts have found that the WLAD also

22     extends to women attempting to become pregnant.  Kuest, 111 Wn. App. at 43.  Regardless of

23     whether Denny was aware that plaintiff was actually pregnant at the time of her termination, his

24     knowledge of her attempt to become pregnant is sufficient to establish that she was a member of

25     a protected class.

26     ORDER GRANTING IN PART
       AND DENYING IN PART DEFENDANTS'
       MOTION FOR SUMMARY JUDGMENT - 5

1    Defendants also contend that plaintiff has failed to make out a *prima facie* case because

2    she has not "eliminat[ed] *the possibility* that the failure to perform was the reason" for her

3    dismissal.  Reply at p. 4 (emphasis in original).  In <u>Aragon</u>, however, the Ninth Circuit explicitly

4    rejected the contention that a plaintiff must "eliminate the possibility" that he or she was fired

5    for performance reasons in order to make a *prima facie* case.  292 F.3d at 659.  Here, as in

6    <u>Aragon</u>, plaintiff has presented evidence that she has not received any formal write-ups for poor

7    performance or been subject to any disciplinary actions in her seven years of employment with

8    defendants.  <u>See id.</u>  She has also put forward evidence that indicates that she received favorable

9    feedback on her job performance in the months and years prior to her termination and that other

10   employees, including supervisors, have attested to the quality of her work and her work ethic.

11   Defendants' arguments regarding plaintiff's failure to provide kiss sheets are best left for the

12   pretext stage of the analysis.  <u>Id.</u>  Plaintiff has met her minimal burden of establishing that she

13   was qualified for her job as a F&I manager.

14       **2.    Pretext**

15   Because defendants have offered a legitimate, nondiscriminatory reason for plaintiff's

16   termination – that plaintiff was terminated for her consistent failure to provide management with

17   purchase disclosure and testimonial forms – the Court must determine whether plaintiff can

18   demonstrate that defendants' proffered explanation is pretext for unlawful discrimination.  She

19   can do so "'either directly by persuading the court that a discriminatory reason more likely

20   motivated the employer or indirectly by showing that the employer's proffered explanation is

21   unworthy of credence.'"  <u>Chuang v. Univ. of Cal. Davis</u>, 225 F.3d 1115, 1124 (9th Cir. 2000)

22   (quoting <u>Tex. Dep't of Comty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981)).  When a plaintiff

23   attempts to prove pretext with circumstantial evidence, as is the case here, she must do so with

24   "specific" and "substantial" evidence "that tends to show that the employer's proffered motives

25   were not the actual motives because they are inconsistent or otherwise not believable."  <u>Godwin</u>

26   ORDER GRANTING IN PART
     AND DENYING IN PART DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT - 6

1    v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998).

2         The strongest evidence of pretext concerns the timing of plaintiff's termination.

3    "Temporal proximity between protected activity and an adverse employment action can by itself

4    constitute sufficient circumstantial evidence of retaliation in some cases." Bell v. Clackamas

5    County, 341 F.3d 858, 865-66 (9th Cir. 2003).  Here, Denny acknowledges that he was aware

6    that plaintiff was attempting to become pregnant in "late 2004."  Crosetto Decl., Ex. A.  Denny

7    and Hern indicate that this was the same period that they began discussing plaintiff's

8    termination.  Though plaintiff was fired on January 14, 2005, Hern acknowledges that he

9    instructed Denny in early December 2004 to wait until after the Christmas season to fire

10   plaintiff.  Interpreting the facts in the light most favorable to the non-moving party, Denny

11   became aware of plaintiff's intention to become pregnant at approximately the same time that

12   the decision was made to terminate her employment.  The proximity between plaintiff's

13   termination and Denny's acquisition of knowledge of plaintiff's pregnancy plans is sufficient on

14   its own to defeat defendants' motion for summary judgment.  See Yartzoff v. Thomas, 809 F.2d

15   1371, 1376 (9th Cir. 1987) (sufficient question of employer intent raised in retaliation claim

16   under Title VII where adverse actions occurred less than three months after compliant was filed

17   and less than two months after investigation ended); Cleese, 911 F. Supp at 1319-20 (two month

18   gap between employer becoming aware of plaintiff's pregnancy and her termination was

19   sufficient to create question of fact regarding employer's intent).

20        Questions related to the timing of plaintiff's termination are accentuated by the lack of

21   formal written warnings regarding plaintiff's failure to produce kiss sheets or testimonials and

22   other evidence which indicates that her job performance was generally regarded as otherwise

23   strong.  In addition, the record reveals inconsistencies in defendants' version of events

24   surrounding plaintiff's termination.  Denny, for instance, indicated in his EEOC statement that

25   he terminated plaintiff in January 2005 after reviewing sales records and discovering that the

26   ORDER GRANTING IN PART
     AND DENYING IN PART DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT - 7

number of kiss sheets and testimonials produced by plaintiff was significantly less than those

produced by Marvin Smith.  Crosetto Decl., Ex. U.  He also maintained that he was the only

person involved in the decision to terminate plaintiff.  Id.  These claims run contrary to Denny

and Hern's deposition testimony, which indicates that Hern was involved in the decision to

terminate plaintiff and that the two discussed plaintiff's termination on multiple occasions prior

to Denny's comparison of plaintiff's and Smith's kiss sheet production in January 2005.  While

these inconsistencies may in fact be innocent and not indicative of pretext, when read together

with the other facts discussed above, they raise questions about defendants' intent that are more

appropriately resolved by a trier of fact.  As the Ninth Circuit has explained, "very little

evidence" is required to survive summary judgment in discrimination cases such as this because

an employer's motive is difficult to ascertain, and that "without a searching inquiry into these

motives" by a fact finder, "those [acting for impermissible motives] could easily mask their

behavior behind a complex web of *post hoc* rationalizations.'"  Stegall v. Citadel Broad. Co.,

350 F.3d 1061, 1072-73 (9th Cir. 2004) (quoting Sischo-Nownejad v. Merced Cmty. Coll. Dist.,

934 F.2d 1104, 1111 (9th Cir. 1991)).  Defendants' motion for summary judgment is denied

with regard to plaintiff's claims for pregnancy discrimination under Title VII and the WLAD.

## C.    Other Discrimination Claims

### 1.    Gender Discrimination

Defendant also moves for summary judgment on plaintiff's sex discrimination claims on

the ground that they are identical to plaintiff's pregnancy discrimination claims.  The Court

agrees.  Both federal law and state law treat pregnancy discrimination as a form of sex

discrimination.  Newport News Shipbuilding and Dry Dock Co. v. EEOC, 462 U.S. 669, 684

(1983) ("for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face,

discrimination because of her sex"); WAC 162-30-020 (regarding WLAD).  Plaintiff has not

alleged any facts to support a claim that defendants discriminated against her for gender-based

ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 8

1    reasons unrelated to her pregnancy.  As such, defendants' motion for summary judgment on

2    plaintiff's non-pregnancy related sex discrimination claims is granted.

3         **2.    Disability Discrimination**

4         The Court also grants defendants' motion for summary judgment on plaintiff's disability

5    discrimination claim under the WLAD.  "[P]regnancy and pregnancy related conditions are not

6    considered 'disabilities' under Washington law."  Hegwine v. Longview Fibre Co., Inc., 132

7    Wn. App. 546, 563 (2006).

8         **3.    Interference with FMLA Rights**

9         Plaintiff did not respond to defendants' motion for summary judgment regarding her

10   FMLA claim.  Because there is no genuine issue of material fact, defendants' are entitled to

11   judgment as a matter of law on this claim .

12   **D.    Courtesy Ford's Potential Liability**

13        Plaintiff cross moves for summary judgment to establish that Courtesy Ford and Gig

14   Harbor Ford constitute a "single employer" for the purposes of Title VII and that both are

15   therefore subject to liability.  Plaintiff misstates the relevant legal inquiry on this question.  The

16   four-part test identified by plaintiff for determining whether two entities constitute a "single

17   employer" is not used to "determine joint liability . . . but instead determines whether a

18   defendant can meet the statutory criteria of an 'employer' for Title VII applicability."  Anderson

19   v. Pacific Maritime Ass'n, 336 F.3d 924, 928-29 (9th Cir. 2003).[4]  Here, Gig Harbor Ford does

20   not dispute that it has at least 15 employees.  Because Gig Harbor Ford's status as an

21   "employer" for Title VII purposes is undisputed, the integrated enterprise test is inapplicable.

22

23        [4] Another district court recently explained the proper application of the integrated employer test
     as follows:  "[a] plaintiff with an otherwise cognizable Title VII claim against an employer with less than
24   15 employees may assert that the employer is so interconnected with another employer that the two form
     an integrated enterprise and that collectively this enterprise meets the 15-employee minimum standard."
25   Nowick v. Gammell, 351 F. Supp. 1025, 1034 n. 27 (D. Hawaii 2004).

26   ORDER GRANTING IN PART
     AND DENYING IN PART DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT - 9

1    See id. at 929.

2        It is also undisputed that Gig Harbor Ford and Courtesy Ford are separate corporate

3    entities and that plaintiff was an employee of Gig Harbor Ford at the time she was discharged.

4    Therefore, the relevant question here is whether Courtesy Ford is subject to either indirect

5    employer or joint employer liability.  See EEOC v. Pac. Mar. Ass'n, 351 F.3d 1270, 1273-74

6    (9th Cir. 2003).  "Liability as an indirect employer requires that the employer have 'some

7    peculiar control over the employee's relationship with the direct employer' and that the indirect

8    employer engaged in 'discriminatory 'interference.''"  Id. at 1274 (quoting Anderson, 336 F.3d

9    at 932).  Plaintiff has alleged only one link between Courtesy Ford and the termination of

10   plaintiff, and that is the involvement of Rick Hern.  Though Hern was indeed the Vice President

11   of Courtesy Ford, he was also the Vice President of Gig Harbor Ford, which is presumably the

12   role he was acting in when he discussed the termination of plaintiff with Denny.  This link is

13   insufficient to establish any sort of interference with plaintiff's employment by Courtesy Ford.

14   Because plaintiff has produced no evidence to support the contention that Courtesy Ford was

15   "the entity performing the discriminatory act," Courtesy Ford cannot be held liable as an indirect

16   employer.  See Pac. Mar. Ass'n, 351 F.3d at 1274; see also Anderson, 336 F.3d at 931.

17       Courtesy Ford could nevertheless still be subject to joint employer liability if both

18   Courtesy Ford and Gig Harbor Ford "control the terms and conditions of employment of the

19   employee."[5]  Pac. Mar. Ass'n, 351 F.3d at 1275.  The Ninth Circuit has stated that the "sine qua

20   non" of determining whether an entity is a joint employer is whether the entity has "the right to

21   hire, supervise and fire employees."  Id. at 1277.  The Tenth Circuit, in a case cited favorably by

22   the Ninth Circuit in Pacific Maritime Association, has characterized joint employers as those

23   who "share or co-determine those matters governing the essential terms and conditions of

24   _____

25       [5] Both parties incorrectly use the terms "joint employer" and "single employer" interchangeably
     throughout their summary judgment memoranda.

26   ORDER GRANTING IN PART
     AND DENYING IN PART DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT - 10

1  employment." Bristol v. Bd. of County Comm'rs, 312 F.3d 1213, 1218 (10th Cir. 2002).

2          Though defendants originally moved for summary judgment to dismiss Courtesy Ford,

3  they concede in their reply memorandum that summary judgment on that question is

4  inappropriate at this time:

5          Defendants also moved for summary judgment as to Courtesy Ford's
           role as a proper party defendant.  In reviewing plaintiff's materials,
6          defendants believe that plaintiff has raised a genuine issue of
           material fact as to whether Courtesy Ford may be treated as a single
7          employer for purposes of discrimination law and that the matter
           should be properly determined at trial.

8  Reply at p. 9.  The Court agrees.  Plaintiff has put forward substantial evidence indicating that

9  there is significant cooperation, interaction and collaboration between the two corporations on

10 matters of employment policy and performance tracking.  That said, there are still significant

11 questions of disputed fact regarding the exact role that Courtesy Ford plays in personnel

12 decisions at Gig Harbor Ford, particularly as that role relates to this case.  Denny, for instance,

13 maintains that he was solely responsible for personnel decisions at Gig Harbor Ford.  Because

14 the determination of joint employment is a fact based inquiry, it is a question best resolved by

15 the trier of fact.  Both parties' motions for summary judgment on the question of Courtesy

16 Ford's status as a joint employer are therefore denied.

17                              **IV.  CONCLUSION**

18         For all the foregoing reasons, defendants' motion for summary judgment (Dkt. #50) is

19 DENIED IN PART and GRANTED IN PART.  Plaintiff's cross-motion for summary judgment

20 (Dkt. #59) is DENIED.

21         DATED this 20th day of April, 2007.

22

23                              _MMA S Caswik_

24                              Robert S. Lasnik
                                United States District Judge
25

26 ORDER GRANTING IN PART
   AND DENYING IN PART DEFENDANTS'
   MOTION FOR SUMMARY JUDGMENT - 11